UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN E. TAYLOR (#R66376),<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | Case No. 1:21-cv-4116<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff John E. Taylor sues the Illinois Department of Corrections ("IDOC"), Wexford Health Sources, Inc. ("Wexford"), Marlene Henze, Michelle Miller, Michelle Smith (collectively, the "Wexford Employees" and together with Wexford, the "Wexford Defendants"), David Gomez, Charles Truitt, and Luciana Galindo (collectively, the "IDOC employees" and together with the IDOC, the "IDOC Defendants"). The operative complaint, which is the Third Amended Complaint ("TAC"), asserts 24 counts, alleging violations of the Americans with Disabilities Act and the Rehabilitation Act, cruel and unusual punishment under the Eighth and Fourteenth Amendments, and violation of procedural due process under the Fourteenth Amendment, [66]. The case is currently before the Court on the IDOC Defendants' motion to strike and dismiss, [100].[1] For the reasons explained below, the Court grants in part, and denies in part, Defendants' motion [100].

---

[1] The Wexford Defendants also moved to dismiss, [73], [75], but Plaintiff resolved all claims against the Wexford Defendants, and the Court thus denied those motions as moot. *See* [139].

I.     Factual Background[2]

Plaintiff John E. Taylor, an inmate housed until recently at Stateville Correctional Center, suffers from various physical disabilities. [66] ¶¶ 1–2; 22–23. More than 25 years ago, Plaintiff underwent treatment, which included radiation therapy and surgical intervention, for a cancerous mass in his right leg. *Id.* ¶ 24. Due to this treatment, Plaintiff intermittently and without warning loses sensation in his right leg, which causes him to walk unsteadily and, if he is not careful, fall. *Id.* ¶¶ 24–30. Plaintiff cannot walk long distances without the assistance of a wheelchair, cane, or walker. *Id.* ¶ 30.

A.     **Plaintiff's Access to Wheelchairs and Restroom Facilities**

In 2013, Defendants issued Plaintiff a medical permit to allow him to use a wheelchair for mobility assistance; the permit also prohibited anyone from forcing Plaintiff to use the stairs at Stateville. *Id.* ¶¶ 32–33. Defendants, who control the availability of wheelchairs, typically only provide two to four wheelchairs per housing unit, and Plaintiff's housing block consistently contains fewer wheelchairs than necessary to accommodate all of the inmates with wheelchair permits. *Id.* ¶¶ 36–40, 45–47. Defendants also maintain policies of storing wheelchairs in the infirmary instead of in the housing units and of failing to repair or replace broken wheelchairs. *Id.* ¶¶ 43–46. As a result, Plaintiff does not always have access to a wheelchair when he needs one. *Id.* ¶¶ 48–51.

---

[2] The Court draws these facts from Plaintiff's TAC, [66], and accepts them as true for present purposes.

Because he often does not have access to a wheelchair, Plaintiff is routinely unable to access certain resources or attend to daily activities, including attending medical appointments, filling medical prescriptions, accessing legal documents, and attending religious activities. *Id.* ¶¶ 50–51. Plaintiff has filed multiple grievances regarding wheelchair access at Stateville, and each of the Defendants is aware of Plaintiff's inability to regularly access a wheelchair. *Id.* ¶¶ 52–53. Although Defendants have responded to Plaintiff's grievances, they have failed to address his concerns. *Id.* ¶¶ 53–54.

Even when Plaintiff does have access to a wheelchair, he still cannot safely move around his housing unit because the unit does not contain wheelchair ramps. *Id.* ¶ 99. To attend activities and appointments outside his housing unit, Plaintiff must use the stairs, which has resulted in his falling and suffering injury. *Id.* ¶¶ 100–101. Although Defendants responded to Plaintiff's grievances regarding the lack of wheelchair ramps, they refused to remedy the issue, and at least one Defendant responded to Plaintiff's grievances acknowledging that Stateville failed to comply with the ADA. *Id.* ¶¶ 104, 107–08.

Defendants have also failed to make ADA-compliant restroom facilities available to Plaintiff. *Id.* ¶¶ 81–85. For example, the toilet facilities and showers in Stateville do not have grab bars to enable Plaintiff to safely use the facilities, i*d.* ¶ 83, and the only ADA-compliant shower in Plaintiff's housing unit remained broken for months, despite Plaintiff's repeated requests for Defendants to repair it. *Id.* ¶¶ 86–88. As a result, Plaintiff has fallen numerous times in the non-ADA-compliant

3

showers, suffering injury. *Id.* ¶¶ 93–94. At times, he has simply been unable to shower for months on end. *Id.* Plaintiff filed multiple grievances notifying Defendants that he lacked access to ADA-compliant facilities. *Id.* ¶¶ 89–91.

### B. Plaintiff's Access to Recreation Time and Defendants' Retaliatory Efforts

In 2018, Plaintiff underwent surgery to treat a severe abdominal hernia and spent 11 months in the infirmary recovering. *Id.* ¶¶ 112–13. In April 2019, Dr. Henze discharged Plaintiff from the infirmary. Plaintiff, who did not believe he had made a full recovery yet, filed a grievance against Dr. Henze for discharging him prematurely. *Id.* ¶¶ 115–16. After Plaintiff filed the grievance, Dr. Henze ordered that Plaintiff be denied access to recreation activities for health and safety reasons based upon his medical condition, even though Plaintiff participated in recreational activities prior to his discharge. *Id.* ¶¶ 117–18. Due to Dr. Henze's order, Defendants denied or restricted Plaintiff's recreation time for three consecutive years. *Id.* ¶ 119.

Plaintiff filed multiple grievances based upon his restricted access to recreation activities, but Defendants denied him relief because Dr. Henze ordered the restriction for Plaintiff's health and safety. *Id.* ¶ 122. Plaintiff alleges that Defendants improperly restricted his access to recreational activities as retaliation for the grievances he filed. *Id.* ¶¶ 123–25; 133.

Plaintiff alleges the Defendants grew irritated with him for filing numerous grievances, and they recommended that he be transferred to a different correctional facility, where Plaintiff would be unable to pursue his continuing education program. *Id.* ¶¶ 146–49. Plaintiff alleges that the Defendants knew Plaintiff would not have

access to the same educational opportunities at the new facility, and that they recommended his transfer to retaliate against him for the grievances he filed. *Id.* ¶¶ 147–50.

### C. Procedural Posture

Plaintiff submitted a pro se complaint on August 2, 2021, paying the filing fee. *See* [1]. On initial screening, the Court allowed the case to proceed, but dismissed Plaintiff's initial complaint and recruited counsel to represent him. *See* [8], [11]. With the assistance of counsel, Plaintiff amended his complaint, ultimately filing the TAC, [66], on October 30, 2023. The TAC asserts twenty-four claims, ten of which remain directed at one or more of the IDOC Defendants. Plaintiff alleges that the IDOC and Warden Truitt violated the ADA (Counts I and XIII) and the Rehabilitation Act (Counts II and XIV); and that IDOC employees Gomez, Truitt, and Galindo violated the Eight and Fourteenth Amendments by subjecting Plaintiff to cruel and unusual punishment (Counts XI, XV, and XVII) and violated Plaintiff's Fourteenth Amendment due process rights (Counts XII, XVI, and XVIII). The IDOC Defendants move to strike Plaintiff's ADA and Rehabilitation Act claims (Counts I, II, XIII, and XIV) and to dismiss Plaintiff's due process claims (Counts XII, XVI, and XVIII) and his deliberate indifference claims against the individual IDOC Defendants (Counts XI, XV, and XVII). *See* [100].

## II. Applicable Legal Standards

### A. Motion to Dismiss

Although a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), to survive a motion to dismiss under Rule 12(b)(6), it must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To provide a defendant with "fair notice" of what the claim is and the "grounds upon which it rests," *id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating the complaint under Rule 12(b)(6), the Court accepts all well-pled facts as true and construes all reasonable inferences in the non-moving party's favor. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The moving party has the burden of proof and "must prove entitlement to relief." *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

### B. Motion to Strike

Under Rule 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f). Courts generally disfavor motions to strike because they "potentially serve only to delay" proceedings. *NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom,*

6

*Ltd.*, 85 F. Supp. 3d 988, 993 (N.D. Ill. 2015) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

The burden for a motion to strike is high; movants "must show that the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration and that the allegations are unduly prejudicial." *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 880 (N.D. Ill. 2019) (quoting *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997)). If the targeted material has at least some "possible relation to the controversy" and does not "cause the objecting party prejudice," the court should deny the motion to strike. *Siegel v. HSBC Holdings, plc*, 283 F. Supp. 3d 722, 730 (N.D. Ill. 2017) (quoting *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)).

### III. Discussion & Analysis

The IDOC Defendants move to strike or dismiss all of the claims asserted against them, and the Court considers the parties' arguments below.

#### A. Plaintiff's ADA and Rehabilitation Act Claims (Counts I, II, XIII and XIV)

Plaintiff asserts claims for violation of the ADA and the Rehabilitation Act against the IDOC and against Defendant Truitt in his official capacity. The IDOC Defendants move to strike these claims on the grounds that: (1) Plaintiff has failed to specify what form of relief he seeks against each of the IDOC Defendants; (2) his claims against the IDOC and Truitt under the ADA and the Rehabilitation Act are redundant; and (3) he ignores sovereign immunity by asserting an ADA claim against the State.

7

Defendants are correct that bringing a claim under the ADA and the Rehabilitation Act against both the IDOC and Truitt in his official capacity remains redundant and unnecessary. An official capacity suit against an individual is synonymous with an action "against the government entity of which the official is a part." *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). Thus Counts XIII and XIV, which state claims against Warden Truitt in his official capacity for violation of the ADA and the Rehabilitation Act, remain redundant to Counts I and II, which state claims against the IDOC for violation of the same statutes, and the Court dismisses Counts XIII (ADA) and XIV (Rehabilitation Act). *See Kielbasa v. Ill. E.P.A.*, No. 02 C 4233, 2003 WL 880995, at *3 (N.D. Ill. March 3, 2003) (dismissing as "redundant" official capacity claims where the same claim was brought against the agency itself); *Michael M. v. Bd. of Educ. of Evanston Twp. High School Dist. No. 202*, No. 09 C 797, 2009 WL 2258982, at *2 (N.D. Ill. July 29, 2009) (same); *Wilson v. IDOC*, No. 20-cv-141-NJR, 2020 WL 1674269, at *3 (S.D. Ill. April 6, 2020) (same).

The Court, however, declines to strike Plaintiff's ADA claim against the IDOC at this stage. Plaintiff has properly stated a claim under both the ADA and the Rehabilitation Act against the IDOC, and Defendants' suggestion that Plaintiff could have pled his claim in a single count under the Rehabilitation Act does not mean that Rule 8 requires him to do so. *See, e.g. Cesca v. Western Ill. Univ. Bd. of Trustees*, No. 4:23-cv-04043-SLD-JEH, 2024 WL 519191, at *10 (C.D. Ill. Feb. 9, 2024) (allowing "plaintiff to try his case as he would like" by asserting both an ADA and Rehabilitation Act claim). Further, the inclusion of both the Rehabilitation Act and

8

the ADA claim does not impact Plaintiff's damages because any recovery under the two statutes remains coextensive. *Jaros v. Ill. Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). Thus, the Court need not decide "the thorny question of sovereign immunity" at this stage. *Id.* The Court denies Defendants' motion to strike as to Counts I and II.

### B.   Plaintiff's Procedural Due Process Claims (Counts XII, XVI, and XVIII)

Plaintiff also brings procedural due process claims against the individual IDOC Defendants, Gomez (Count XII), Truitt (Count XVI), and Galindo (Count XVIII). But Plaintiff's allegations do not support a procedural due process claim.

In a § 1983 action alleging a procedural due process violation, a plaintiff "must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property,'" without due process of law. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). As such, where the alleged deprivation at the heart of a § 1983 procedural due process claim does not implicate a protected life, liberty, or property interest, that claim must be dismissed pursuant to Rule 12(b)(6). *See Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018) (affirming district court's dismissal of a procedural due process claim where the alleged harm did not deprive the plaintiff of life, liberty, or property).

#### 1.   Plaintiff's Grievances

The Seventh Circuit has held that state-created prison grievance procedures constitute mere procedural rights that do "not confer any substantive right upon an inmate." *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001); *see also Antonelli v.*

*Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("A state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, "the inadequacies of the grievance procedure itself, as distinct from its consequences, cannot form the basis for a constitutional claim." *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015); *see also Mutawakkil v. Huibregtse*, 527 F. App'x 567, 568 (7th Cir. 2013) (finding an ineffective grievance procedure "is not an independent violation of the Constitution").

To the extent Plaintiff seeks to assert a procedural due process claim based upon Stateville's allegedly deficient grievance procedure, his claims fail. Defendants do not argue that Plaintiff has failed to exhaust his administrative remedies, and Plaintiff clearly enjoys "full access to the courts, which satisfies his procedural due process rights." *Id.*

### 2. Plaintiff's Wheelchair Access and Recreation Time

Plaintiff also argues that Defendants violated his procedural due process rights by denying him recreation time and failing to provide him with wheelchairs and wheelchair ramps. According to Plaintiff, denial of these activities violated his liberty interest in remaining free from lengthy terms of segregation.

Plaintiff's argument conflates substantive and procedural due process. To assert a procedural due process claim, Plaintiff must assert "that the decision-making process lacked adequate procedural protections" not "that the decision itself was fundamentally flawed." *Polenz v. Parrott*, 883 F.2d 551, 557 (7th Cir. 1989). Here, Plaintiff contests the decision to deny him certain accommodations based upon his

10

medical condition, not the process by which Defendants came to that decision. His allegations support his claim that Defendants acted with deliberate indifference toward Plaintiff's medical needs in violation of the Eighth and Fourteenth Amendments. Thus, Plaintiff, in effect, attempts to bring a substantive due process claim for the same constitutional violations he alleges in Counts XI, XV, and XVII. The Supreme Court rejected a similar attempt in *Albright v. Oliver*, holding that where "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" 510 U.S. 266, 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Plaintiff's constitutional protection arises from the Eighth and Fourteenth Amendments, which in this case, includes access to adequate medical care.

Plaintiff's reliance on *Marion* and *Williams* is misplaced. Those cases refer to instances in which a correctional facility subjected an inmate to a disciplinary segregation without proper due process safeguards. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693 (7th Cir. 2009); *Williams v. Brown*, 849 F. App'x (7th Cir. 2021). The Supreme Court has acknowledged that disciplinary actions may require due process safeguards if they impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). But Plaintiff's claims arise from an alleged substantive violation of his constitutional rights, not inadequate process. Unlike the plaintiffs in

11

*Marion* and *Williams*, Plaintiff alleges that his restricted access to wheelchairs and recreation time resulted from Defendants' deliberate indifference in providing him medical care. Thus, Plaintiff's constitutional claim arises from Defendants' alleged violation of his Eighth and Fourteenth Amendment rights, and the same conduct that forms the basis of that claim cannot also support a separate substantive due process claim. *See Luellen*, 2016 WL 6442178, at *4; *see also Albright*, 510 U.S. at 273.

The Court dismisses Counts XII, XVI, and XVIII.

### C. Plaintiff's Eighth and Fourteenth Amendment Claims (Counts XI, XV, and XVII)

Defendants move to dismiss Plaintiff's Eighth and Fourteenth Amendment claims against Gomez, Truitt, and Galindo on the grounds that he failed to sufficiently plead deliberate indifference and that the exhibits he attached to his complaint foreclose liability.

To state a claim for deliberate indifference, Plaintiff must allege that he had a sufficiently serious medical condition, and that Defendants knew of and disregarded an excessive risk to his health or safety. *Jervis v. Mitcheff*, 258 F. App'x 3, 6 (7th Cir. 2007). A defendant has a "sufficiently culpable state of mind" for a deliberate indifference claim if he or she: (1) had subjective knowledge of the risk to the inmate's health; and (2) disregarded that risk. *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 301 (7th Cir. 2009) (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)).

First, Defendants argue that Plaintiff's allegations fall short of the deliberate indifference standard because he alleges only that each Defendant "was and/or should have been" aware that Plaintiff faced serious harm. [100] at 4–5. Regardless of

Plaintiff's use of the phrase "was and/or should have been," Plaintiff alleges sufficient facts to suggest that the IDOC Defendants were aware of Plaintiff's serious risk of harm, including that the Defendants reviewed and acknowledged Plaintiff's grievances, interacted with Plaintiff, and reviewed his ADA Disability Accommodation. [66] ¶¶ 351–52, 390, 397, 425–26. Such allegations support the inference that Defendants either knew or, at the very least, strongly suspected facts showing a likelihood that Plaintiff had a serious medical need that required Defendants' intervention.

Further, Defendants argue that the failure to "take perfect action or even reasonable action," [100] at 5, does not rise to the level of deliberate indifference. But an official may be deliberately indifferent to a plaintiff's medical needs if he or she "knows about the constitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (2015)). Thus, if an official "is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.'" *Id.* (*quoting Farmer*, 511 U.S. at 837).

Here, Plaintiff alleges that Defendants Gomez, Truitt, and Galindo each received, reviewed, and responded to grievances Plaintiff filed, alerting them to the lack of wheelchair access and ADA compliant restroom facilities. [66] ¶¶ 61–62; 73–75; 89–91. Further, Plaintiff alleges that Gomez and Truitt, in their position as warden, and Galindo, in her position as Healthcare Administrator, had the authority

13

to provide Plaintiff with the medical accommodations he required but failed to do so and that such failure caused him injury. *Id.* At the motion to dismiss stage, Plaintiff's allegations that the officials at Stateville "systematically ignored these requests for redress," *Perez*, 792 F.3d at 782, sufficiently state a claim for deliberate indifference. The fact that Plaintiff attached to the complaint Defendants' responses to his grievances indicating that Defendants planned to or had already resolved Plaintiff's grievances does not refute Plaintiff's allegations that he did not actually receive such relief; Plaintiff's decision to attach the responses does not foreclose these claims.

The Court denies Defendants' motion to dismiss Counts XI, XV, and XVII.

## IV. Conclusion

For the reasons explained above, the Court grants in part and denies in part the IDOC Defendants' motion [100]. The Court strikes Counts XIII and XIV as redundant and dismisses Counts XII, XVI, and XVIII. Plaintiff may proceed with his claims against the IDOC in Counts I (ADA) and II (Rehabilitation Act) and with his deliberate indifference claims against Defendant Gomez in Count XI, Defendant Truitt in Count XV, and Defendant Galindo in Count XVII.

Date: February 11, 2025                                Entered:

                                                       _____
                                                       John Robert Blakey
                                                       United States District Judge

14